IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRY D. EDWARDS, SR. | § | |
| | § | |
| *Petitioner*, | § | |
| | § | Case No. 3:10-CV-6-M |
| v. | § | |
| | § | DEATH PENALTY CASE |
| WILLIAM STEPHENS, Director, Texas | § | |
| Department Of Criminal Justice, | § | **EXECUTION SCHEDULED:** |
| Correctional Institutions Division, | § | **JANUARY 26, 2017** |
| | § | |
| *Respondent*. | § | |
| | § | |

**PETITIONER'S SECOND RULE 60(B) MOTION TO REOPEN JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW PURSUANT TO JANUARY 13,
2017 CERTIORARI GRANT IN *DAVILA V. DAVIS*, 16-6219 (U.S.)**

## I.     STATEMENT OF THE CASE

Texas is scheduled to execute Mr. Terry D. Edwards today, January 26, 2017, at 6:00 p.m. This Court is aware of the grave constitutional infirmities in this Dallas County judgment, its direct appeal, its state habeas corpus proceedings, and, of course the profound problems in these federal habeas proceedings due to the misconduct of the appointed counsel, Mr. Richard Wardroup. Petitioner explicitly incorporates the pleadings in his January 10, 2017, Rule 60(b) motion (Doc. 83) and the accompanying appendix (as referenced herein), which the Court denied while granting a certificate of appealability on "whether the abandonment by counsel could be the sort of defect in the integrity of the federal habeas proceedings that could warrant Rule 60(b) relief." (Doc. 91 at 9).

Yesterday, the Fifth Circuit, denied this Rule 60(b) motion, *In re Edwards v. Davis*, No. 17-10066 (1/25/2017) at 16, and denied the related stay application, *id.* at 17. The Fifth Circuit's

opinion is devoted mainly to many elements surrounding the discrete issue for which this Court granted its COA. Mr. Edwards is currently seeking certiorari review from that decision.

During the pendency of the first Rule 60(b) motion in this Court, the Supreme Court granted certiorari review in *Davila v. Davis*, No. 16-6219 (U.S.), from the Fifth Circuit's denial of a certificate of appealability. No. 15-70013, 2016 WL 3171870 (5th Cir. May 26, 2016). The Supreme Court granted review on one of the two questions presented, specifically, whether "the rule established in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), that ineffective state habeas counsel can be seen as cause to overcome the procedural default of . . . substantial ineffective assistance of appellate counsel claims."

This Court is aware of the gross inadequacy of Mr. Edwards's state habeas counsel, C. Wayne Huff, and also of the ineffectiveness on direct appeal of Mr. Douglas Parks, the appellate counsel.

On November 11, 2003, Mr. Douglas Parks was appointed to represent Mr. Edwards. Mr. Edwards never met or spoke with Mr. Parks. On June 14, 2004, counsel filed a motion for a five-month extension of time. The court granted the motion, imposing a new deadline of November 30, 2004, and ordering that "NO FURTHER EXTENSIONS WILL BE ENTERTAINED. Failure to file appellant's brief may result in the issuance of a show cause order and/or judgment of contempt."(App. 671), Clerk's Order. That date came and went, without any filing on Mr. Edwards's behalf. On December 16, the CCA mailed Mr. Parks a postcard notifying him of the failure. (App. 672). In response, on December 22, 2004, Mr. Parks hastily prepared and filed his brief via mail, along with an extension motion requesting "until December 30, 2004, or the date this Court receives this brief, whichever is earlier." The brief was docketed on the following day. The State responded on June 28, 2005. The

CCA initially scheduled the case for oral argument on September 28, 2005. On August 18, 2005, Mr. Parks wrote the CCA informing them that, in this capital case, "Appellant does not desire oral argument and submits the cause on the briefs." (App. 673). The State, one week later, replied, "Based on this Court's informing me that Appellant has waived oral argument, the State will also waive oral argument." (App. 674). Thus, the case was submitted and, on March 1, 2006, the CCA denied relief.

After woeful state habeas proceedings, on January 11, 2010, the Court granted the January 4, 2010 motion to appoint Mr. Richard Wardroup in Mr. Edwards's proceedings pursuant to 18 U.S.C. §3599. (Doc. 2).[1] Mr. Wardroup timely filed Mr. Edwards's habeas corpus petition on December 10, 2010 (Doc. 6),[2] which the Court ultimately denied on August 6, 2014 (Docs. 22, 23). The Court denied each of the petition's "six grounds," all of which sought "relief pertaining to jury selection issues" based on the record. (Doc. 22 at 2). The sixth and final jury selection claim concerned appellate counsel ineffectiveness. (Doc. 22 at 18-20).

In ruling on this sixth claim, the Court recognized that "respondent contends that these claims are unexhausted and now procedurally barred." (*Id.* at 13). Further, the Court pointed out that "Edwards acknowledges that he did not present these claims to the state court." (*Id.*, citing Doc. 6 at 47). The Court further noted that "Edwards moved to stay and abate these proceedings in order to exhaust these claims." (*See* doc. 9). He did not object to the recommendation that his

---

[1] Mr. Wardroup was Petitioner's only counsel of record in the federal courts until the Fifth Circuit replaced him on June 25, 2015 with the substitution of Mr. Donald Vernay (*infra*).

[2] Mr. Wardroup simultaneously filed on December 15, 2010 a motion to stay proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), in order to return to state court to exhaust unspecified "unexhausted" and "potentially meritorious" claims. (Doc. 9 at 2). Several months earlier, Messrs. Vernay and Wardoup, acting for Mr. Braziel in his capital petition before this Court, had filed this same generic motion. *Braziel v. Stephens*, No. 3:09-cv-1591-M, Doc. 17, (N.D. Tex. Aug. 17, 2010). In *Braziel*, the Court later characterized the motion as submitted "to abate [Braziel's] proceedings to exhaust a claim of ineffective assistance of trial counsel because that claim was procedurally barred due to the ineffective assistance of state habeas counsel in failing to raise the claim earlier." (Doc. 27, Feb. 28, 2011). Then, during the pendency of *Trevino v. Thaler* in the Supreme Court, this Court *sua sponte* stayed the *Braziel* proceedings. (Doc. 30, discussed *infra*).

motion be denied for failure to show good cause or potential merit (*see* Doc. 12), and the recommendation was accepted (*see* doc. 15)." (*Id.* at 13 n.8).

As set forth in the first Rule 60(b) Motion (Doc. 83 at 23-25), Mr. Wardroup abandoned the case for his new fulltime employment in March 2011. Five months later, on August 15, 2011, the magistrate judge entered the recommendation to deny the *Rhines v. Weber* motion to stay and abey these proceedings. Thus, at that critical point, Mr. Wardroup had already fully disengaged from his representation of Mr. Edwards and did not object to the magistrate's recommendation. On September 12, 2011, the Court accepted the recommendations. (Doc. 15)

As noted previously, Mr. Wardroup filed only an eight-page response to Respondent's answer on March 9, 2012 (Doc. 21), and, upon the Court's judgment on August 6, 2014 (Doc. 22), a notice of appeal (Doc. 24). The Court dismissed the sixth claim in Mr. Edwards's timely petition as procedurally barred. (Doc. 22 at 14). Further, the Court went on to consider the claim and denied it on the merits. (*Id.* at 20).

This sixth habeas claim posited that "[t]he failure of Edwards' counsel on direct appeal to raise any claims regarding the improper denial of Edwards' challenges for cause of [jurors] Sims and Hernandez constituted ineffective assistance." (Doc. 91 at 2).

## II.     ARGUMENT

In light of the Supreme Court's grant of certiorari review in *Davila* (*supra*), this Court should stay Mr. Edwards's execution pursuant to his application herein and hold this case in abeyance pending the merits determination in *Davila*. The defect in these proceedings caused by Mr. Wardroup's profound misconduct warrants reopening of this case, whereupon counsel would provide further grounds to amend the appellate counsel ineffectiveness claim concerning the jury

selection process. As set forth at considerable length (*see* Doc. 83 at 10-12), this jury selection process was beset with deeply disturbing constitutional infirmities.

From an initial pool of approximately 3,000 county residents, the parties individually questioned 143 venire members in order to select Mr. Edwards's jury that, in the end, initially seated only white people. (An alternate of Hispanic ethnicity later replaced one of the initially seated jurors). Mr. Edwards's jury was empaneled months after the first Supreme Court opinion addressing the Dallas County DA's racially discriminatory practices in the case of Mr. Thomas Miller-El. *Miller-El v. Cockrell*, 537 U.S. 322 (2003).[3] In Miller-El's Dallas County trial in 1986, the District Attorney's Office used peremptory strikes to eliminate 10 out of the 11 Black venire members individually questioned. Months after that trial, the Dallas Morning News published its first investigative journalism on that office's institutionalized practices in capital jury selection.[4]

As displayed in the *Miller-El* litigation, the DA's Office under Bill Hill and his predecessors had an entrenched practice of striking prospective African-American jurors that manifested a consistent pattern encompassing the period of the trial at bar.[5]

The trial record at bar (consisting of 47 transcript volumes), reflects the District Attorney's use of its practice of trading strikes by mutual agreement based upon juror questionnaires. In Petitioner's case, this dictated the removal, off the record and without individual questioning from either party, and almost never from the defense, of swaths of the

[3] *See also Miller-El v Dretke*, 545 U.S. 231 (2005), decided shortly after Mr. Edwards's case.

[4] The Dallas Morning News extensively chronicled this era, publishing two separate series of stories, one in 1986 and another in 2005, on the actual practices in that office. *See, e.g.*, Steve McGonigle & Ed Timms, *A Pattern of Exclusion: Blacks Rejected from Juries in Capital Cases*, Dallas Morning News, Dec. 21, 1986 (1986 WLNR 1716765).

[5] *See* Steve McGonigle et al., *A Process of Juror Elimination: Dallas Prosecutors Say They Don't Discriminate, But Analysis Shows They Are More Likely to Reject Black Jurors*, Dallas Morning News, Aug. 21-23 (2005). WLNR 24660181; 2005 WLNR 24659981; 2005 WLNR 24658951; 2005 WLNR 24659140; 2005 WLNR 24658669; 2005 WLNR 24659060; 2005 WLNR 24657978; 2005 WLNR 24658335; 2005 WLNR 24657350; 2005 WLNR 24657134; 2005 WLNR 24657758; 2005 WLNR 24657224; 2005 WLNR 24658546).

venire. This trading practice is known to have "impacted prospective black jurors far more than others, and kept many of those jurors from ever graduating to individual voir dire." (App. 618). As reflected in Mr. Edwards's case, the agreement method "stripped" away "the general demographic representativeness of" Dallas County and enabled the empanelment of a White jury without, apparently, the use of a single peremptory strike exercised against a Black venire member.[6] Yet appellate counsel Mr. Parks failed to address any of these matters derived from the record – or the record's inadequacy – on direct appeal.

Current counsel for Petitioner have also obtained a strike list apparently maintained by ADA D'Amore (and/or ADA Tokoly) that includes, next to 32 of the venire members, a handwritten, encircled "B."[7] (App. 623). Especially in light of the troubled history of this District Attorney's Office,[8] there is obvious reason for "concern[] that these markings strongly suggest racial indications." (App. 622). These present deeply concerning markers of potentially odious prosecutorial misconduct and constitutional violations and, further, strongly reflects the profound consequences of defense counsel's appeasement of the State's trading practice to strip away diversity and representativeness from Mr. Edwards's jury.

Upon reopening these habeas proceedings, Mr. Edwards would readily relate jury selection claims back to the sixth claim in his original, timely filed petition (Doc. 6), and would stand to overcome the procedural bar this Court has recognized in the event of a favorable

---

[6] The ostensible basis for this comprehensive striking by agreement of the entire Black venire, apart from the two African-American prospective jurors struck for cause, would have been the individual member's answers to the questionnaire form. However, the DA has provided Petitioner's current counsel with copies of what that office has represented is the entirety of the questionnaires in its possession. These copies number only 35 of the 143 questioned venire members. Among those 35 is a single questionnaire completed by an African-American. It lacks any material that would supply a creditable basis for a cause strike of the given venire member, Mrs. Warrick, yet the DA and defense agreed – off the record – to strike her, just as the State and defense had done with every other Black venire member.

[7] This marking system may reflect race-based jury selection tactics historically used in the and also encountered elsewhere. See ,e.g., Foster v. Chatman, 136 S.Ct. 290 (2016).

[8] In Miller-El v. Cockrell, 537 U.S. 322, 347 (2003), published a mere months before Mr. Edwards's trial, the Supreme Court noted that the fact that Dallas County ADA's marked race on the prospective juror's cards "reinforced" the supposition of racial discrimination established in the record in that case.

determination of the question presented in *Davila*, *viz.*, whether the *Martinez/Trevino* rule providing cause to overcome a procedural default from ineffective state habeas counsel extends to claims of ineffective assistance of appellate counsel.

Under Fed. R. Civ. P. 15(c)(1)(B), amendment to a pleading relates back to an original pleading when it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Rule 15 applies to habeas petitions and amended claims may relate back to a timely claim if they are similar "in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005), *quoted in United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (finding proposed claim of ineffective assistance of trial counsel based on failure to file an appeal did not relate back to claims of trial counsel ineffectiveness claims "during pretrial proceedings and at the sentencing stage"). Here, there is the necessary "common core of operative facts" to permit relation back. *Schirle v. Sokudo USA, L.L.C.*, 484 893, 901 (5th Cir. 2012), quoting *Felix*, 545 U.S. at 659.

Upon reopening, Mr. Edwards would be poised to amend the sixth claim of his timely but procedurally barred appellate counsel ineffectiveness claim concerning the jury selection.

## III.   CONCLUSION

For the foregoing reasons, Mr. Edwards respectfully requests that this Court grant his Motion and reopen his judgment or, alternatively, stay these proceedings and hold them in abeyance pending the Supreme Court's determination in *Davila v. Davis*, 16-6219. The Court should also grant a stay of execution for the reasons set forth in Petitioner's application and amended application filed on January 13 and 17, 2017. (Docs. 87 and 88).

Respectfully Submitted,

/s/ Joseph J. Perkovich
JOSEPH PERKOVICH

NY Bar Reg. 4481776
Phillips Black Project
(212) 400-1660 (Tel.)
j.perkovich@phillipsblack.org
PO Box 2171
New York, NY 10008


/s/ Jennifer A. Merrigan
JENNIFER MERRIGAN
MO Bar No. 56733
Phillips Black Project
(816) 695-2214 (Tel.)
j.merrigan@phillipsblack.org
PO Box 63928
Philadelphia, PA 19147

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January 2017, the foregoing pleading was served upon all counsel of record in this case via the ECF filing system, pursuant to the Federal Rules of Civil Procedure.

/s/ Joseph J. Perkovich


## CERTIFICATE OF CONFERENCE

I hereby certify that above-signed counsel (Ms. Merrigan) has conferred with opposing counsel, Ellen Stewart-Klein, via email, on January 26, 2017. Ms. Klein has been informed of the details of this filing. She represented that her office does oppose this motion.

/s/ Joseph J. Perkovich